Our final case of the day is Trottier against Saul. Mr. Forbes. Thank you, your honor. My name is Randall Forbes. I represent the disability claimant. This case has two parts, but the two parts really are, they depend on each other. In one sense, they all depend on the controlling weight argument. The argument that says that the treating psychiatrist should have been given controlling weight for the medical source statement opinion. We have the regulation, we're using the older regulation on controlling weight here. But behind the regulation is the logical bridge doctrine. There has to be built an accurate and logical bridge between the evidentiary basis and the conclusion reached. When we are dealing with competing physician opinions, part of the logical bridge relates to what I call the pyramid of qualification. The top of the pyramid is the treating specialist. Then in this case and after that, the next layer of the pyramid is the consultative examiner who examined the claim at one time. The bottom of the pyramid is the non-examining consultant who didn't examine the plaintiff at all. The point is, if the judge is going to discount the opinion of the treating specialist, especially the treating specialist that has a multiyear treatment history or in this case, the treating history from the treating psychiatrist is shorter, but it was over the course of several months and it was a part of the same provider group so there was a multiyear treatment history from the same provider group. The judge has to eliminate from the equation first if he's going to find inconsistency that the psychologist, whether they're one time examining psychologist or no time examining psychologist, that the inconsistency is not caused by the psychologist's lesser qualification because what we have here are treating psychiatrists. That was never addressed. How can you say that the treating psychiatrist who is inconsistent with these other opiners or providers when everybody is less qualified and the less qualified ones have no treatment relationship? The logical bridge can't even begin to be built until that factor is dealt with. I also wanted to point out how close this case is to the Crump case. In Crump, there was a multiyear treatment with a psychiatrist. There is one here. In Crump, there was a treating psychiatrist opinion. There is one here. In Crump, the claimant had some drug use problems. The gaps were comparable. The global assessment of functioning scores were comparable in the two. In both, the government and the district court mistook the treatment environment comments for opinion as to what the claimant could do in the competitive work environment. That error is made in this case where the district court points out that the treating psychiatrist said that they could concentrate during the therapeutic appointment. Therefore, somehow, they make the inferential leap that that means they can do it in a competitive work environment. Crump points that out. Crump says at 571, not so, as the court goes, Crump correctly observes that Dr. Babu, and for that matter, Dr. Scully too, found only that she could pay attention in the doctor's office and thus in the context of a structured, relatively short mental health examination in altogether different environments than a full day at a competitive workplace with sustained demands. The treating psychiatrist in this case had work preclusive limitations that should be controlling. I would like to reserve the rest of my time for rebuttal, Your Honor. Certainly, counsel. Thank you. Mr. Hensley. Thank you, Your Honor. May it please the court, my name is Jay Hensley, and I represent the appellee in this matter. Mr. Forbes is addressing Mr. Trottier's treating psychiatrist, Dr. Drabransky, who in April 2016 completed a checkbox psychological questionnaire and a mental residual functional capacity assessment. Now, on both of these forms, Dr. Drabransky checked off several boxes to indicate his opinion that Mr. Trottier had marked limitations in most of the forms available categories. Now, the ALJ in addressing this opinion acknowledged that Dr. Drabransky was one of Mr. Trottier's treatment providers, but correctly found Dr. Drabransky's conclusions unsupported by the evidentiary record as a whole. And in making this finding, the ALJ cited two reasons. First, Dr. Drabransky had only been treating Mr. Trottier for six months at the time he completed the assessment. And secondly, and more importantly, Dr. Drabransky's opinion was inconsistent with the objective evidence of record. Mr. Trottier asserts correctly that Dr. Drabransky had access to Mr. Trottier's treatment records preceding his initiation of treatment with Dr. Drabransky. While this may be true, the fact remains that Dr. Drabransky failed to explain any basis for his extreme conclusions about Mr. Trottier's condition either during or before his treatment relationship with him began. The ALJ further explained that Dr. Drabransky's marked findings were inconsistent with other of appropriate affect, adequate attention and concentration, and adequate memory in the medical record throughout 2012 through 2016. The ALJ reasoned that these findings showed a fair ability to remember, concentrate, interact, and adapt, and therefore a finding of moderate limitations in these functional areas was better supported. Finally, the ALJ observed that there was, quote, no good basis in the medical evidence of record or testimony to find that Mr. Trottier would be off task or absent excessively, end of quote. The medical evidence the ALJ cited reasonably supported his conclusion that Mr. Trottier was not markedly limited in the many functional areas that Dr. Drabransky's opinion indicated. Accordingly, the ALJ properly evaluated Dr. Drabransky's opinion and found that it was not entitled to controlling weight because the and because it was inconsistent with the record. Mr. Trottier disputes the ALJ's reasonable conclusions in this case, but these findings we submit should be upheld under the standard of review here. Addressing the Crump case briefly, we would submit to you that this case is distinguishable from the courts holding in Crump for two reasons. We now have a new regulation which specifically defines what moderate limitations in concentration, persistence, and pace are. The agency's recent rule revisions, which are applicable to this case because they were effective January of 2017, they clarify that a moderate limitation in concentration, persistence, or pace means that a claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. And the agency stated in the rule revision that its definition of moderate as defined therein was consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. Also, this case is distinguishable from Crump because in Crump, this court was very careful to explain that in that case, the ALJ had given some apparent recognition of the claimant's concentration, persistence, or pace difficulties when he actually incorporated specific functional limitations into a second hypothetical, specifically being off task 20% of the time or otherwise requiring two unscheduled absences per month. However, in his decision, the ALJ and Crump critically failed to acknowledge the VE, the vocational expert's response to that hypothetical, that a person so limited would lack the functional capacity to sustain any employment. This court held that the ALJ's failure to incorporate the vocational expert's opinion anywhere in the functional capacity assessment left the residual functional capacity determination altogether uninformed by considerations of off task time or unplanned leave. By contrast, in the present case, the administrative law judge did not neglect vocational testimony relating to any concentration, persistence, or pace difficulties. Likewise, during the hearing, when asked how his mental health symptoms affect him, Mr. Trottier mainly emphasized the fact that he experienced mood swings and he emphasized his difficulties with housing and his difficulties with his mother's health. Nothing really with regard to the concentration difficulties. And then just very quickly, Mr. Trottier claims that the ALJ erred in placing too much weight on his ability to concentrate during short treatment sessions. But with respect, we would ask the court, what other evidence does the ALJ have to consider other than treatment notes, doctor's reports, and hearing testimony? And when each and every treatment note says that Mr. Trottier's memory is intact and he's able to follow the interview, we submit this is significant whether Mr. Trottier chooses to believe it or not. The commissioner does not dispute that Mr. Trottier has a significant mental impairment. He's been diagnosed with and treated for major depressive disorder. This is not an issue. The ALJ found Mr. Trottier's major depressive disorder severe at step two of the sequential evaluation and factored this condition into his assessment of Mr. Trottier's ability to perform work, including his ability to concentrate and maintain pace while working. However, your honors, with little to no actual treatment notes or diagnostic evidence of Mr. Trottier is asking that this court improperly reweigh the evidence. The ALJ's decision in this case is supported by substantial evidence and should be upheld. Now, the main issue Mr. Trottier is raising with regard to the moderate limitations in concentration, persistence, or pace, it's certainly familiar to this court. In a line of cases on this issue that are recent, the court has made it clear that the rules are not static, as Mr. Trottier would leave this court to believe. No magic words are needed to accommodate a moderate concentration, persistence, or pace rating. Instead, this court has told us that an administrative law judge must look to the evidence. Indeed, even generic limitations, such as limiting a claimant to simple, routine, and repetitive tasks, such as here, may properly account for a moderate concentration, persistence, and pace rating, as long as they adequately account for the claimant's demonstrated psychological symptoms found in the record. Your honors, in this case, the administrative law judge's residual functional capacity determination sufficiently addressed how Mr. Trottier's moderate concentration, persistence, and pace rating affected his ability to stay on task. And the evidentiary record did not warrant limitations beyond those contained in the hypothetical. So, what evidence supports the residual functional capacity determination? In this case, the LJ offered a specific explanation for accommodating Mr. Trottier's severe mental impairments by finding that he was limited to simple and routine work tasks involving only simple work-related decisions and frequent contact with supervisors, coworkers, and the public. The LJ specifically discussed his approach to assessing Mr. Trottier's functional capacity, acknowledging that he had deficits in concentration, persistence, or pace, but finding only that this limitation adversely affected his ability to understand, remember, and carry out detailed instructions. Although, again, as I mentioned, Mr. Trottier reported- Counsel? Yes. You have one minute remaining. Thank you very much. I'll close up. Although Mr. Trottier reported stress about his physical medical issues, his living situation, his finances, and his mother's deteriorating health, his mental status examinations showed relatively mild anxiety and subdued mood, as well as appropriate affect, adequate attention and concentration, and adequate memory. We submit, Your Honors, the LJ was explicit in his rationale, and his decision is supported by substantial evidence. So, for all of these reasons, unless the Court has any questions, I thank you very much for your time, and we ask that you affirm the decision. Thank you, Counsel. Anything further, Mr. Forbes? Uh, yes, Your Honor. As the Seventh Circuit, I believe, uh, uh, said in Elora, the ALJ had at his, um, uh, disposal a stable of experts. No other examining psychiatrist countered the opinion of the treating specialist. So, if there's an evidentiary deficiency, it is the making of the ALJ and not the claimant. The treating psychiatrist reviewed the whole treatment record, which was a part of the record where he worked, um, and offered an opinion about function in the competitive work environment. That is different than identifying the, uh, effect or the, um, symptoms in a therapeutic treatment environment. What else is a claimant to do but go regularly, sometimes over years, to mental health treatment and then ask his doctor to give a functional statement in relation to the competitive work environment? That was done here. All of the government's arguments do not pass the logical bridge state, uh, uh, logical bridge, uh, doctrine. They, they don't, they, they haven't, they haven't built that logical bridge. It's like they are relying on a, um, um, well, I'm, I'm looking for an analogy. It's not coming to me. Uh, it's, it's like, uh, they're asking a mason, uh, a brick mason to tell us about the of the building. They're, they're experts aren't qualified. Not only that, they all made their opinions. You have one minute remaining. The, um, the experts the commissioner relies on are not as qualified. Their opinions are stale and the commissioner, uh, if he thought that, uh, countering the examining or the treating psychiatrist was critical, should have had a, uh, should have ordered up a complicated examination with a treating psychiatrist who had a chance to review the whole medical record and then come up with a countering opinion. They didn't come up with that opinion and they should lose. Thank you, your honor. Thank you, Mr. Forbes. The case has taken under advisement and the court will be in recess.